PEOPLE *v.* HUBBARD

OPINION OF THE COURT

1. CRIMINAL LAW — EVIDENCE — SUFFICIENCY — WITNESSES — CRED-
IBILITY.

The mere fact that the trial judge, sitting without a jury, dis-
believes defendant's testimony in his own behalf at a criminal
trial is not sufficient reason for believing the testimony of
prosecution witnesses; therefore the trial judge cannot properly
convict the defendant merely because he disbelieves his tes-
timony.

2. APPEAL AND ERROR—CRIMINAL LAW—NONJURY TRIAL.

The Court of Appeals, in reviewing a nonjury criminal case, is
required to review the entire record to determine whether the
trial judge clearly erred (GCR 1963, 517.1).

3. APPEAL AND ERROR—CRIMINAL LAW—NONJURY TRIAL—WITNESSES
—CREDIBILITY.

The Court of Appeals, in reviewing a nonjury criminal trial, should
give due regard to the special opportunity of the trial court to
judge the credibility of witnesses, but the trial court's evalua-
tion of credibility is not controlling upon the reviewing court.

4. APPEAL AND ERROR—CRIMINAL LAW—NONJURY TRIAL—FINDINGS
OF FACT—EVIDENCE—SUFFICIENCY.

A finding made by the trial court in a nonjury criminal case is
clearly erroneous when, although there is evidence to support it,
the reviewing court upon reviewing the entire record is left
with the definite and firm conviction that a mistake has been
made.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses § 868.
[2] 4, 5 Am Jur 2d, Appeal and Error §§ 493, 931, 932.
[3, 4] 53 Am Jur, Trial § 1123.
·5 Am Jur 2d, Appeal and Error §§ 839–845.
[5, 7] 44 Am Jur, Rape §§ 23, 113.
[6] 53 Am Jur, Trial § 1123.

5. RAPE—ASSAULT WITH INTENT TO RAPE—NONJURY TRIAL—EVI-
DENCE—SUFFICIENCY.

Trial court's finding that defendant charged with rape of his
14-year-old daughter was guilty of assault with intent to com-
mit rape *held*, erroneous where the principal evidence against
defendant was given by the daughter whom he allegedly at-
tacked, several witnesses testified that the daughter's reputation
for telling the truth was poor and they would not believe her
under oath, the daughter was shown to have spoken untruthfully
on the witness stand, there was a great deal of hostility be-
tween father and daughter, and between father and mother,
and the finding of guilty of assault with intent to rape
shows that the trial court did not believe the daughter's tes-
timony that her father had raped her (MCLA §§ 750.85, 750-
.520).

DISSENTING OPINION

J. H. GILLIS, P. J.

6. APPEAL AND ERROR—CRIMINAL LAW—NONJURY TRIAL—FINDINGS
OF FACT—WITNESSES—CREDIBILITY.

*The special opportunity of the trial court, sitting in a criminal case*
*without a jury, to determine the credibility of those witnesses*
*who appear before it should not be overlooked (GCR 1963,*
*517.1).*

7. RAPE—ASSAULT WITH INTENT TO RAPE—NONJURY TRIAL—WIT-
NESSES—CREDIBILITY.

*Finding by trial court, sitting without a jury, that defendant*
*was guilty of assault with intent to rape did not reflect*
*a disbelief by the trial judge of the complaining witness' tes-*
*timony that defendant had raped her, but rather awarding by*
*the trial court of the benefit of the doubt to defendant in*
*light of medical testimony that it could not be determined*
*with certainty whether an act of sexual intercourse had been*
*committed with complainant at the time alleged.*

Appeal from Jackson, Charles J. Falahee, J.
Submitted Division 2 April 9, 1969, at Lansing.
(Docket No. 5,124.) Decided October 2, 1969. Leave
to appeal granted June 11, 1970. See 343 Mich 789.

Harvey F. Hubbard was convicted of assault with intent to commit rape. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *Ronald M. Gruesbeck,* Assistant Prosecuting Attorney, for the people.

*Willard F. Rappleye,* for defendant.

Before: J. H. GILLIS, P. J., and LEVIN and BRONSON, JJ.

LEVIN, J. The defendant was charged with statutory rape[1] of his daughter who was 14 years of age at the time of the alleged offense. The trial judge, sitting without a jury, acquitted the defendant of statutory rape and found him guilty of the lesser included offense[2] of assault with intent to commit rape.[3] Defendant appeals, claiming the following:

1. The people failed to satisfy their burden of proof because his daughter's testimony was uncorroborated.[4]

2. Since the judge found that the defendant did not have sexual intercourse with his daughter and there was no claim that the defendant had otherwise

---

[1] MCLA § 750.520 (Stat Ann 1954 Rev § 28.788).

[2] *People* v. *Oberstaedt* (1964), 372 Mich 521, 524.

[3] MCLA § 750.85 (Stat Ann 1962 Rev § 28.280).

[4] Defendant asserts that *People* v. *Inman* (1946), 315 Mich 456; *People* v. *Miller* (1893), 96 Mich 119; and *People* v. *Randall* (1903), 133 Mich 516, where the Court stated the common-law rule that corroboration of a charge of rape is not necessary, are distinguishable because in those cases there was evidence of the defendant's guilt in addition to the testimony of the prosecutrices.

*Cf.* Corroborating Charges of Rape, 67 Colum L Rev 1137 (1967); Comment, Psychiatric Examination of Prosecutrix in Rape Case, 45 NC L Rev 234 (1966); *People* v. *Cowles* (1929), 246 Mich 429; *Mosley* v. *Commonwealth* (Ky, 1967), 420 SW2d 679; *People* v. *Brown* (1968), 99 Ill App 2d 281 (241 NE2d 653).

touched or assaulted her, there was insufficient evidence to convict him of *assault* with intent to commit rape.[5]

3. Although the trial judge gave a lengthy bench-dictated opinion he did not, in compliance with the requirements of GCR 1963, 517.1, state his findings of fact other than his conclusory finding that the defendant was guilty of assault with intent to commit rape and, therefore, this court should remand the case for explicit fact finding.[6]

4. The trial judge clearly erred in convicting the defendant upon the impeached testimony of his daughter.

At the trial the defendant's daughter testified that she accompanied him on an errand in his truck dressed in a two-piece bathing suit. She claimed that he stopped the car, removed the bottom half of her bathing suit and had sexual intercourse with her. She said that she offered no resistance because she was afraid of him. On direct examination she said her father was fully dressed, but on cross-examination she stated that he, too, was wearing a bathing suit.

The daughter reported the incident to her mother the day after it allegedly occurred and the State police were called. She was not examined by a doctor until the day after the police were notified.

---

[5] In *People* v. *Dowell* (1904), 136 Mich 306, the Court stated that "actual violence or actual assault is essential to the commission of this crime, even upon a girl under the age of consent." In earlier and later cases (see, *e.g.*, *People* v. *Kongeal* [1920], 212 Mich 307), the Court stated that the consent of a female under the age of consent to a sexual assault did not make it any less an assault but, nevertheless, argues the defendant upon the authority of *Dowell*, assault is an essential element of the crime even where the person allegedly assaulted is under the age of consent.

[6] See *People* v. *Beaudoin* (1967), 7 Mich App 461; *People* v. *Martinovich* (1969), 18 Mich App 253, 259; *People* v. *Owens* (1968), 13 Mich App 469, 483, footnote 7 (LEVIN, J., dissenting). *Cf. People* v. *Walker* (1967), 6 Mich App 600.

The doctor testified that he could not find any evidence that she had been recently raped, that is to say, within the previous 24 hours. He testified that the hymenal membrane had been broken some time in the past and he could find no evidence of injury.

The defendant took the stand and denied he had committed the alleged sexual assault upon his daughter. The secluded scene where the incident allegedly occurred was not checked by the State police until three days later and no attempt was made by the police to locate tire tracks or other evidence.

When the daughter was 10 years of age she made a similar charge against her father and was examined by a physician who testified at the trial of the currently charged offense that he found no evidence of injury to the hymen when he examined her following this earlier charge.

Two neighbors and the principal of the school attended by the daughter testified that her reputation for veracity was not good and they would not believe her under oath.[7]

During the trial the daughter was asked whether she had communicated with her mother, the defendant's wife, since she had been placed in a foster home. After pausing to reflect, she denied that she had had any communication with her mother. When testifying, her mother also at first denied any such communication but then it was brought out that there had been several communications between daughter and mother. Thus, the daughter spoke untruthfully on the witness stand. Furthermore, it

---

[7] The people called a counselor from the school as a rebuttal witness. He stated he knew nothing negative regarding the daughter's reputation for veracity and when asked whether he would believe her under oath replied he had no more reason to doubt her testimony than that of anyone else in the courtroom. Clearly this witness had a high tolerance for prevaricators. It is apparent from his testimony that his professional view was that, despite the peccadillos of his students, he should remain their friend and not judge them.

is apparent from an examination of this record that there was a great deal of hostility both before and after the occurrence of this alleged incident between the daughter and her father (the defendant) and also between him and his wife.

We can well understand the trial judge's expressed doubts and the difficulty he had in reaching a decision. Apparently he resolved his doubts in favor of a compromise, acquitting the defendant of statutory rape but convicting him of assault with intent to commit rape.

About the only theory of the evidence consistent with a verdict of guilty of assault with intent to commit rape and not guilty of statuory rape would be that, as the daughter testified, the defendant did remove the bottom of her two-piece bathing suit and exposed himself, but he thereupon desisted from having intercourse with her although, according to her testimony, she offered no resistance whatever. While that is a conceivable view of the evidence, we do not think that the defendant should have been convicted on such an improbable theory. The trial judge disbelieved the daughter's testimony that the defendant had sexual intercourse with her. We share his reluctance to believe the testimony of this witness whose credibility was so heavily impeached.

The judge's statement in justification of his decision to convict the defendant of assault with intent to commit rape, that he had no reason to believe the defendant, was a misplaced emphasis. The judge's disbelief of the defendant was not a reason for believing the daughter if he did not believe her, and he apparently did not. The judge could properly convict the defendant only if he was persuaded beyond a reasonable doubt of the defendant's guilt on

the basis of affirmative testimony and evidence which he deemed credible and believed to be true.[8]

In a nonjury case we are required to review the entire record to determine whether the trial judge clearly erred. GCR 1963, 517.1; see *People* v. *Hummel* (1969), 19 Mich App 266; *People* v. *Rawls* (1967), 6 Mich App 586; *People* v. *Walker* (1967), 6 Mich App 600, 602; *People* v. *Shaw* (1968) 9 Mich App 558, 565; *cf. People* v. *Beaudoin* (1967), 7 Mich App 461, 464. The "clearly erroneous" terminology is derived from the Federal Rules of Civil Procedure, rule 52, and incorporates for appellate review of all cases tried by a judge without a jury the concepts of the standard traditionally applied by the Michigan Supreme Court in reviewing equity cases.[9] Due regard is required to be given by the reviewing court to the special opportunity of the trial court to judge the credibility of witnesses, but the trial court's evaluation of credibility is not controlling upon the reviewing court. "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States* v. *United States Gypsum Co.* (1948), 333 US 364, 395 (68 S Ct 525, 92 L Ed 746), reh den 333 US 869 (68 S Ct 788, 92 L Ed 1147).

---

[8] See *People* v. *Matthews* (1969), 17 Mich App 48, footnote 5; *In re Rose* (1965), 62 Cal 2d 384 (42 Cal Rptr 236, 239; 398 P2d 428, 431).

[9] See Committee Note to GCR 1963, 517, and 2 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), pp 596, 597. See, also, *Humphrey* v. *Swan* (1968), 14 Mich App 683, 686, where we stated:

"Appellate courts traditionally exercise a broader review of judges' decisions than of jury verdicts.

" 'A jury's verdict-view of facts is entitled to an even higher degree of appellate respect than is a judge's verdict-view of the same facts, learned though the judge may be in law. For reasons known well to students of American history, a finding of fact by "the twelvers" is more apt to be sound than that of one man.' *Schneider* v. *Pomerville* (1957), 348 Mich 49, 54."

Having reviewed the record and having given due regard to the trial judge's special opportunity to judge credibility, we are convinced that in this case a mistake was made, that this defendant, acquitted of statutory rape, should not have been convicted of assault with intent to commit rape on an improbable hypothesis based on the testimony of a thoroughly discredited witness.

Reversed. The defendant is discharged.

Bronson, J., concurred.

J. H. Gillis, P. J. (*dissenting*). Unlike the majority, after reviewing the entire evidence in this case, I am not "left with the definite and firm conviction that a mistake has been committed." Surely my colleagues would agree that the trial judge was not mistaken when he noted that "what the whole case narrows down to is believability between two witnesses * * *." The trial judge continued:

"And I have no question in my mind that in the past—as shown—in the past, on occasions, she has been guilty of telling untruths, as have a lot of children.

"However, in this particular case, I can find no strong motive as to why she would want to lie in this particular situation.

"Now, even as to her complaint back when she was ten years old, I am inclined to believe even that, except as to what, perhaps, was finally consummated, as to whether it was rape, or something else, but I feel that something took place back at that time. And, at the same time, I see no reason, Mr. Hubbard, to place any more credibility on your testimony either—I mean, as far as what kind of a citizen you are.

"There is one thing about the case, however, that bothers me, and that is this: Dr. Ries' testimony.

I realize that your daughter was not taken to Dr. Ries in the period of time that he would think was necessary to determine whether there was a rape committed here. He said it would be impossible for him to determine that. So, therefore, he couldn't help the court as to whether he found that there was any sexual intercourse committed here.

"So, I feel that even if we were to give you the benefit of the doubt on that—which I am going to do, is to give you the benefit of the doubt on that—I still feel that there was an assault here with intent to commit rape.

"And as I say, the rape may have been committed, but I'm not going to—I am going to give you the benefit of the doubt that that didn't happen."

I cannot agree with the conclusion of the majority that the trial judge was reluctant to believe the testimony of the prosecutrix. It is clear that the trial judge believed her testimony. Thus, the trial court could have found defendant guilty of rape, since testimony corroborating that of defendant's daughter was unnecessary. *People* v. *Inman* (1946), 315 Mich 456. Had the trial judge found defendant guilty of rape, I would affirm, since I am of the opinion that the record in this case does not reflect the testimony of a thoroughly discredited witness. We should not overlook the special opportunity of the trial court to determine the credibility of those witnesses who appear before it. See GCR 1963, 517.1.

The trial court, however, gave the defendant the benefit of the doubt created by the inconclusive testimony of Dr. Ries. The court stopped short and found that sexual intercourse had not occurred. It is apparent that the trial judge was not persuaded beyond a reasonable doubt that penetration had occurred. This does not, however, compel the conclusion reached by the majority that defendant's con-

viction for assault with intent to commit rape could only have been based upon "improbable theory."

"It is true that upon this record the proof upon one side shows the completed act of sexual intercourse with a girl under the age of 14 years, while upon the other a denial of any offense is made. Under such proof it cannot be denied that a verdict of assault with intent to rape is illogical. But an assault with intent to commit rape is necessarily included in every rape. The defendant's counsel are alleging, not an injurious error, but one which, if it could be called an error, has resulted to defendant's advantage." *People* v. *Miller* (1893), 96 Mich 119, 120.

I would affirm defendant's conviction. *People* v. *Miller, supra; People* v. *Martin* (1919), 208 Mich 109; *People* v. *Bradovich* (1943), 305 Mich 329.